# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **KATHY M. KENEFICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07 C 4338** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Morton Denlow** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are cross-motions for summary judgment in this Social Security case.

Claimant, Kathy Kenefick ("Claimant" or "Kenefick"), seeks reversal or remand of the

decision by defendant Michael J. Astrue, Commissioner of Social Security

("Commissioner"), denying Claimant's application for Disability Insurance Benefits

("DIB"). Claimant argues the Administrative Law Judge ("ALJ") committed the following

errors: (1) failed to analyze Claimant's alleged post-polio syndrome in determining

medically determinable impairments; (2) failed to correctly determine Claimant's onset

disability date; (3) made an improper credibility determination; and (4) failed to properly

determine Claimant's residual functional capacity ("RFC") assessment. The Commissioner

disputes all four issues. For the reasons set forth below, the Court grants Claimant's motion

for summary judgment and denies the Commissioner's motion for summary judgment.

# I. BACKGROUND FACTS

## A.      Procedural History

Claimant applied for Disability Insurance Benefits on June 1, 2005.  R. 84-86.  Her claim was initially denied on July 21, 2005, R. 76-80, and again upon reconsideration on November 2, 2005.  R. 72-75.  Claimant filed a request for hearing and a hearing was held before Administrative Law Judge Janice M. Bruning ("ALJ") on March 20, 2007.  R. 39-68. Thereafter on April 23, 2007, the ALJ issued a decision finding Claimant not disabled through December 31, 2002, her date last insured ("DLI").  R. 10-19.  The Appeals Council denied Claimant's request for review on June 15, 2007, making the ALJ's decision the final decision of the Commissioner.  R. 6-8.  Claimant then filed this action for review pursuant to 42 U.S.C. § 405(g).

## B.      Hearing Testimony - March 20, 2007

### 1.      Kathy M. Kenefick - Claimant

Claimant is married and lives at home with her husband and two cats.  R.45-46.  She has a college degree in sociology.  R. 45.  Since August 30, 1997 Claimant has not worked except for a brief period in 2003 when she helped her husband pay bills for his consulting business.  R. 47.  Claimant worked from 1991 to 1997 as a secretary or administrative assistant. R. 48-49.  Her responsibilities included taking time and attendance, delivering mail and filing.  R. 49-50.

Claimant testified that five years ago she could stand for about one half hour and could sit continuously only for two hours. R. 50. At Claimant's last job her back would hurt her considerably because she sat for most of the day. *Id*. Claimant could lift about one gallon of milk but not more because of pain in her right shoulder. R. 51. Claimant recalled no difficulty in bending, stooping, or kneeling. R. 52.

Claimant could perform most household chores including cooking, laundry, and cleaning. *Id*. About five years ago she could drive locally, but now relies on her husband to drive. R. 54. She also often forgets what she is doing and her lack of concentration affects chores like dusting or watching televison. R. 56. She uses the computer with help from her husband but then cannot remember what he has shown her. *Id.*

Claimant testified that her depression keeps her from socializing with many family or friends. *Id*. She has been depressed most of her life but her suicidal thoughts first began in college. R. 59. Claimant continues to have suicidal thoughts despite several different medications. R. 60. Also, anxiety generally affects her ability to concentrate and, in some instances, has kept her from doing daily activities like driving or shopping. R. 61.

## 2. Thomas Dunleavy - Vocational Expert (VE)

Thomas Dunleavy, the VE, began his testimony by analyzing Claimant's past relevant work. R. 64. The VE indicated that Claimant's earlier testimony made it difficult to determine exactly what Claimant did but that it likely was a mid-level secretarial position. *Id*. Uncertain as to the exact skills involved but aware of some filing and record-keeping responsibilities, the VE classified Claimant's past relevant work as a sedentary, semi-skilled

occupation. *Id.*

The ALJ then posed several hypotheticals to the VE. *Id.* The ALJ first asked whether a person of Claimant's same age, education, and work experience capable of light, unskilled work could perform any job, including Claimant's past relevant work. *Id.* The VE testified that jobs would be available for a person with this profile but that Claimant's past relevant work would not be included among them. *Id.* The ALJ modified the hypothetical to include the added restriction of occasional contact with the public, co-workers, and supervisors. R. 65. Again, the VE found Claimant's past relevant work would be excluded from the jobs available to a person with this profile. *Id.*

The ALJ's next hypothetical proposed an individual with Claimant's age, education and work experience capable of sedentary work. *Id.* To this the VE responded that on that basis alone Claimant's past relevant work would be feasible. *Id.* The ALJ then modified this hypothetical to include sedentary work with occasional contact with the public, co-workers, and supervisors to which the VE testified that past relevant work would be precluded. *Id.*

The ALJ then returned to her first hypothetical of light, unskilled work, and asked whether there were other jobs available for a person of this capacity. *Id.* The VE listed several jobs meeting this criteria including at least 10,000 assemblers, 8000 packagers, and 4000 office cleaners. R. 66. With the added restriction of occasional contact with the public, co-workers, and supervisors, the VE believed these jobs would still be feasible. *Id.*

The Claimant's attorney proposed additional restrictions on the ALJ's hypotheticals. *Id.* To the first hypothetical of light, unskilled work, the attorney added the limitation of a

worker unable to remain on task for 20% of the workday because of poor concentration and distracting thoughts. *Id.* The VE stated that such a limitation would preclude any competitive employment. *Id.* As to the specific jobs cited by him earlier, the VE explained that workers in those fields must work within 15% of the average worker. R. 67. If a particularly unskilled person is more than 10% off task during the day that would mean "serious trouble" for their employment. *Id.*

## C.   Medical Evidence - Physical Impairments

### 1.   Dr. David Chang M.D. - Orthopedic Surgeon

Claimant suffered from polio as a child that primarily affected her feet and wrists. R. 183. In 1991, Dr. Chang diagnosed Claimant with severe metatarsalgia[1] of the fourth metatarsal[2] and recurrent hammer toes of the left foot second and third toes. R. 172. Claimant underwent metatarsal osteotomy to correct the hammer toes that same year. *Id.* In 1996, Dr. Chang performed a second operation to correct hammer toes of the left foot fourth and fifth toes. R. 177. Dr. Chang continued to see Claimant for routine visits. On July 10, 1996, Claimant complained of lower back pain, which Dr. Chang attributed to the change in gait from post-op and he recommended physical therapy. R. 187. An x-ray of Claimant's knees taken in 2000 revealed loss of joint space in both knees. *Id.* Dr. Chang's impressions

---

[1]"Pain in the forefoot in the region of the heads of the metatarsals." Stedman's Medical Dictionary (28th ed. 2006).

[2]"The five long bones numbered I to V beginning with the bone on the medial side forming the skeleton of the anterior portion of the foot, articulating posteriorly with the three cuneiform and the cuboid bones, anteriorly with the five proximal phalanges." *Id.*

from this x-ray included early osteoarthritis[3] of the medial compartment of the right knee, medial epicondylitis[4] of the right elbow, and painful hallux valgus[5] of the left foot recurrent. *Id*. Dr. Chang recommended physical therapy and anti-inflammatory medications for treatment. *Id*. He referred Claimant to Dr. Jeffrey Senall for evaluation of her left foot and to determine whether she would be a candidate for repeat surgery. R. 184.

### 2. Dr. Jeffrey Senall M.D. - Orthopaedic Associates of Dupage

Dr. Senall evaluated Claimant for great toe pain on referral from Dr. Chang. R. 184. Dr. Senall noted obvious shortening in the left lower extremity and shortening of the left foot. R. 183. His impressions included left first MTP (metatarsal phalangeal) joint pain and painful calluses of the left foot. R. 182. Dr. Senall recommended a custom orthotic for treatment believing it would improve the majority of Claimant's symptoms. *Id*. He did not recommend surgery but did note it would be the next step should the custom orthotic fail to improve Claimant's symptoms. *Id*.

### 3. Dr. Thomas A. Atkins M.D. - Fox Valley Orthopaedic Institute

In June 2004, Claimant visited Dr. Atkins complaining of right shoulder and arm pain.

---

[3]"Arthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result; mainly affects weight-bearing joints, is more common in older persons." *Id*.

[4] "Inflamation of the epicondyle or of the tissues adjoining the epicondyle of the humerus, tennis elbow." Dorland's Illustrated Medical Dictionary, 604 (29th ed. 2000).

[5] "A condition in which the great toe is bent toward, or over, the neighboring toes." Attorney's Dictionary of Medicine, 291 (39th ed., 2005).

R. 211. An MRI taken a couple of days later revealed right shoulder rotator cuff tendinosis, possible superior labrum anterior to posterior (SLAP) tear, and degenerative changes. R. 208. Claimant received a cortisone injection and a short course of Vicodin for pain as well as instructions to continue with physical therapy. *Id.*

### 4. Dr. David Gibson M.D. - Provena Mercy Medical Center

In May 2005, Claimant had an x-ray taken after complaining of pain in the left buttock. R. 341. Dr. Gibson reviewed the x-ray and found mild scoliosis of the lumbar spine. *Id.*

### D. Medical Evidence - Mental Impairments

### 1. Dr. M. Zesiewicz M.D. - Psychiatrist, Central Dupage Hospital

Claimant's medical records indicate a hospitalization for suicidal ideation in 1988. R. 305. Dr. Zesiewicz saw Claimant later that year and evaluated her for depression and suicidal thoughts. R. 170. Dr. Zesiewicz's notes state that Claimant had taken several medications in the past for depression. *Id.* His diagnostic impression of Claimant was major affective disorder, depressed type. *Id.* He admitted Claimant to Central Dupage Hospital to participate in individual and group therapy sessions along with re-instituting pharmacotheraphy. *Id.*

### 2. Dr. Michael Kuna M.D. - Psychiatrist

In the early 1990s, Dr. Michael Kuna began treating Claimant for depression. R. 344. The record contains two notes written by Dr. Kuna in 2002. R. 284-85. Dr. Kuna's April 2002 progress note reflects that "Kathy is looking pretty good." R.285. Dr. Kuna's next

contact with Claimant was a phone call in August 2002 in which they discussed medication management. R. 284. The record also reflects only two office visits in 2003. R. 282-83. Claimant saw Dr. Kuna on April 7, 2003 after "a long absence," at which time Dr. Kuna again indicated that Claimant was doing reasonably well. R. 283. During Claimant's November 2003 visit Dr. Kuna suggested that she try to find a job outside of her husband's consulting business. R. 282.

In April 2005, Claimant contacted Dr. Kuna informing him that she attempted an overdose with Vicodin. R. 272. Dr. Kuna recommended she go to Mercy Hospital close to her home and to have the emergency room (ER) personnel contact him if they refused admission. *Id.* There are fourteen notes in the record between the months of March and April of 2005 of which eleven were phone contacts with Claimant or Claimant's husband. R. 268-82. In May 2005, after Claimant's hospitalization, Dr. Kuna indicated that he believed Claimant would qualify for social security disability as "she has been unable to have gainful employment for at least ten years." R. 268.

Dr. Kuna submitted a letter to Claimant's attorney on March 2, 2007 diagnosing Claimant with "major depression, recurrent, severe." R. 344. He states in the letter that since the 2005 hospitalization Claimant has done reasonably well on the Cymbalta anti-depressant and "her prognosis is fair to good on medication without the stress of work." *Id.* However, Dr. Kuna further indicates that Claimant has problems with concentration and persistence. *Id.* Moreover, he believes her disability is permanent and "her ability to perform work activities is poor to none." *Id.*

### 3.    Dr. Emad Amer M.D. - Central Dupage Hospital

Following her attempted overdose with Vicodin, Claimant was admitted to Central Dupage Hospital.  R. 223.  Dr. Amer evaluated Claimant and diagnosed her on April 12, 2005 with major depression, severe, recurrent without psychotic features and suicidal ideations.  *Id*.  The treatment plan called for starting Claimant on Trazodone and Cymbalta and regular group psychotherapy and individual counseling.  *Id*.  Dr. Amer discharged Claimant to Elgin State Mental Health Center to continue long-term treatment and possible ECT (electroconvulsive therapy) to stabilize her mood.  R. 219.

### 4.    Elgin State Mental Health Center[6] - April 2005 Hospitalization

Claimant was hospitalized for approximately one week at Elgin State Mental Health following discharge from Central Dupage in April 2005.  R. 265.  The treating psychiatrist at Elgin State Mental Health completed a Psychiatric Report, which asked the physician to evaluate Claimant's ability to do work-related activities such as understanding and responding to instructions and responding to supervisors and other customary work pressures. R. 267.  The physician stated that "patient has limited skills due to psychiatric and physical limitations, post-polio, and several surgeries on feet."  *Id*.

### 5.    Drs. Robert Patey M.D. and Terry Travis M.D. - Non-Examining State Physicians

In Claimant's initial consideration for disability benefits, Dr. Patey reviewed the medical evidence on file and completed a Disability Determination and Transmittal form.

---

[6]Physician name illegible from documents in record.

R. 70.  In this form Dr. Patey stated an inability to establish a primary or secondary diagnosis because of insufficient medical evidence.  *Id*.  Claimant sought reconsideration but submitted no additional evidence in the interim period.  R. 71-75.  Upon reconsideration a second physician, Dr. Travis, reviewed the file and reaffirmed Dr. Patey's statement indicating the inability to establish a diagnosis.  R. 69.  Dr. Travis also completed a Psychiatric Review Technique form on July 5, 2005 finding "no MER [medical evidence of record] sufficient to document a disabling mental illness prior to DLI."  R. 298.

### E.    The ALJ's Decision - April 23, 2007

Following a hearing and review of the evidence on file, the ALJ rendered a decision denying Claimant's application for DIB.  R. 10-19.  The ALJ reviewed Claimant's application under the familiar five-step sequential analysis.  R. 14-15.  *See infra*, Part II.B (Disability Standard).  At step one, the ALJ found Claimant had not engaged in substantial gainful activity since August 30, 1997, Claimant's alleged disability onset date.  R. 15.  At step two, the ALJ found Claimant had the following severe impairments prior to or on her DLI:  history of osteotomies and procedures for hammer toes, right knee osteoarthritis, bunions, and mild scoliosis.  *Id*.  The ALJ did not find Claimant's right shoulder pain or depressive disorder to be severe impairments because neither condition imposed more than "minimal limitations" prior to or on Claimant's DLI of December 31, 2002.  R. 16.  Under step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  R. 16.  The ALJ went on to assess Claimant's RFC ultimately finding that

10

Claimant has the RFC to perform the full range of sedentary work prior to and on her DLI. R. 16-18. In assessing Claimant's RFC, the ALJ found Claimant's medically determinable impairments could be expected to produce the alleged symptoms but did not find Claimant's statements concerning the symptoms to be credible. R. 17. At step four, the ALJ found Claimant capable of performing her past relevant work as a secretary. R. 18-19. Based on her conclusion at step four that Claimant could perform past relevant work, the ALJ did not conduct an analysis under step five. The ALJ concluded the Claimant was not under a disability from August 30, 1997 through December 31, 2002, her date last insured. R. 19.

## II. LEGAL STANDARDS

### A.  Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A "mere scintilla" of

evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Perales*, 402 U.S. at 401). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). It may not, however, re-evaluate the facts, "re-weigh [the] evidence . . . or substitute [its] own judgment for that of the Commissioner." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.* at 368-69. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365. An individual is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A disabled individual is eligible for DIB, however, only if she is under a disability. 42

U.S.C. § 423(a)(1)(E). An individual is under a disability if she is unable to do her previous

work and cannot, considering her age, education, and work experience, partake in any gainful

employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful

employment is defined as "the kind of work usually done for pay or profit, whether or not

a profit is realized." 20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five step sequential analysis. 20

C.F.R. §§ 404.1520(a)-(f). Under this process, the ALJ must inquire, in the following order:

(1) whether the claimant is engaged in substantial gainful employment; (2) whether the

claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a

listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether

the claimant is capable of performing any work in the national economy. *White v. Barnhart*,

415 F.3d 654, 657 (7th Cir. 2005). Once the claimant has proven he cannot continue his past

relevant work because of physical limitations, the ALJ carries the burden to show that other

jobs which the claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881,

886 (7th Cir. 2001).

### III. DISCUSSION

Claimant presents essentially four issues for judicial review: (1) whether the ALJ

erred by failing to analyze Claimant's history of polio and post-polio syndrome in

determining Claimant's medically determinable impairments; (2) whether the ALJ failed to

13

apply the requirements of Social Security Ruling (SSR) 83-20 in determining Claimant's disability onset date; (3) whether the ALJ made a proper credibility determination; and (4) whether the ALJ properly determined Claimant's RFC assessment. The Court begins by noting that it is primarily the absence of relevant discussion in the decision that most troubles the Court rather than the quality of the discussion that did take place.

## A. The ALJ Erred By Omitting a Discussion of Claimant's Alleged Post-Polio Syndrome.

The ALJ's decision made no reference to Claimant's history of polio or her claim of post-polio syndrome. R.13-18. While an ALJ need not discuss every piece of evidence in a claimant's medical file, neither may he ignore an entire line of evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917-19 (7th Cir. 2003) (finding error by ALJ who omitted any discussion of three lines of medical evidence provided by the claimant). Moreover, the Commissioner's own regulations state that they will "consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 404.1512(a).

On the Disability Report filed with the Social Security Administration, Claimant listed four illnesses, injuries, or conditions that she claims limited her ability to work. R. 100. These conditions include: depression, post-polio syndrome, back problems, and suicidal tendencies. *Id.* In correspondence to the ALJ, following the hearing, Claimant's counsel reiterated her theory of the case "that the claimant suffers from **post-polio syndrome** and **long standing severe** depression that in combination render her unable to meet and sustain both the physical and mental demands of any competitive employment." R. 20. The ALJ,

14

however, made no mention of Claimant's alleged post-polio syndrome in the decision.  R. 13-18.

Not only did Claimant specifically allege post-polio syndrome as a disability but the medical records also contain several references to Claimant's history of polio.  R. 180, 183-185, & 257.  Moreover, Claimant's physician at Elgin Mental Health Center completed a Psychiatric Report in April 2005 and in response to questions regarding Claimant's ability to do work-related activities commented that "patient has limited skills due to psychiatric and physical limitations, *post polio*, and several surgeries on feet."  R. 267 (emphasis added).

The Commissioner argues that no medical source of record considered Claimant's impairments in light of post-polio syndrome and that no actual post-polio diagnosis was made.  Moreover, the Commissioner argues that even without an actual diagnosis, little medical evidence supports a reasonable link between the prior polio infection and the present manifestation of Claimant's disorders. Such a link, if found, would be sufficient to find post polio sequelae under the regulations.  SSR 03-1p.

The Commissioner's argument misses the point.  Claimant alleged post-polio syndrome as a disability preventing her from working.  R. 100.  At a minimum, the ALJ should discuss the alleged syndrome and, if necessary, more fully develop the record.  *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (stating the evidence should have alerted the ALJ to a relevant impairment even when the claimant did not claim the impairment on her Disability Form).  The complete absence of any mention of Claimant's alleged post-polio syndrome requires a remand.

Claimant further argues the ALJ ignored evidence demonstrating Claimant met Listing 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 11.11 "Anterior poliomyleitis." The Court notes that had the ALJ included a discussion of post-polio syndrome it may have naturally led to the consideration of this listing. In her decision, however, the ALJ provided one sentence stating she considered "appropriate listings" including section 1.00 for musculoskeletal disorders. R. 16. Beyond that sentence, however, she provided no additional explanation or the specific listings that she considered and rejected. Courts have found the failure to discuss or analyze a possible listing may require a remand. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). The Court can neither determine the specific listings considered by the ALJ nor evaluate whether the evidence adequately supports the ALJ's findings that the impairments did not meet the considered listings. *Scott*, 297 F.3d at 595 ("[b]y failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing.").

The Commissioner now argues there is no evidence reflecting the type of severe motor disturbance that is required by Listing 11.11 and as such Claimant's claim that the Listing should have been considered by the ALJ should be rejected. As the Court noted above, while this may or may not be the case, it is the type of analysis that should have been present in the ALJ's opinion and not provided as a post-hoc rationale by the Commissioner. *See Scott,* 297 F.3d at 595-96 (noting that despite the Commissioner's present argument that the Listing cannot be satisfied, the ALJ's decision lacked any implicit or explicit mention of this

conclusion). Because the Court remands the case to include a discussion of Claimant's alleged post-polio syndrome, the ALJ should also include a discussion of any applicable listings, including 11.11.

**B.    The ALJ Did Not Violate SSR 83-20.**

Claimant next argues that the ALJ erred by not invoking SSR 83-20 to determine Claimant's disability onset date. As the Commissioner correctly points out, however, SSR 83-20 comes into play once an ALJ determines a claimant has a disability. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Claimant relies heavily on *Campbell v. Chater* but this reliance is misplaced. In *Campbell*, the court rebuked the ALJ for failing to employ SSR 83-20 in determining the claimant's disability onset date. 932 F. Supp. 1072, 1078 (N. D. Ill. 1996). The ALJ in that case, however, explicitly stated at the hearing that he found the claimant currently disabled thus requiring him to invoke the procedures of SSR 83-20 to determine the onset of the current disability. *Id.* at 1078-79. By contrast, the ALJ here did not find Claimant disabled. On remand, if the ALJ finds Claimant not disabled as of December 31, 2002, SSR 83-20 would not be triggered. However, if the ALJ does make a disability finding and Claimant's condition as of December 31, 2002 is unclear, then SSR 83-20 would be triggered to determine an onset date.

**C.    The ALJ Made a Proper Credibility Determination.**

Claimant argues the ALJ failed to make a proper credibility determination as required by SSR 96-7p. The Court disagrees. A reviewing court accords special deference to credibility determinations especially when the ALJ adequately describes and considers the

factors laid out in SSR 96-7p. *See Scheck*, 357 F.3d at 703. The ALJ began the RFC analysis by explaining she would consider Claimant's symptoms by first determining whether there is an underlying medically determinable or mental impairment that would support these symptoms and then by evaluating the intensity, persistence and limiting effects of these symptoms on Claimant's ability to do work. R. 17. The ALJ acknowledged that a claimant's statements regarding intensity and the like may not be substantiated by objective medical evidence thus requiring the ALJ to assess a claimant's credibility. *Id*. The ALJ then listed the specific factors laid out in SSR 96-7p[7] that she must weigh when forming a conclusion as to Claimant's credibility. *Id*.

The ALJ found Claimant less than credible but followed this statement with a discussion of the objective medical evidence and other factors that led to this conclusion. R. 17-18. The ALJ considered the shoulder pain Claimant suffered after completing lawn work in 2004 and the right knee pain that developed after a four-mile bike ride in 2000. R. 17. This led the ALJ to conclude Claimant's symptoms were activity-related. *Id*. The Court finds the ALJ thoroughly articulated the factors that she considered in making the adverse credibility determination. Claimant's assertion that the ALJ made a single-sentence

---

[7] SSR 96-7p explains the factors codified in 20 C.F.R. §§ 404.1529, which include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. R. 17.

assessment of her credibility is thus patently inaccurate.  However, should additional information emerge upon considering post-polio syndrome on remand, the ALJ should be open to evaluating Claimant's credibility in light of this information.

**D.     The ALJ Failed to Properly Determine Claimant's Residual Functional Capacity.**

Claimant attacks the ALJ's RFC assessment on several grounds.  The Court finds the ALJ adequately explained and properly rejected Dr. Kuna's opinions in arriving at the RFC assessment.  The Court also finds, however, that the ALJ failed to analyze the specific requirements of Claimant's past relevant work as a secretary, which must be redressed on remand.

**1.     The ALJ Properly Rejected Dr. Kuna's Opinions.**

Claimant argues that the ALJ erred in rejecting the opinion of Dr. Kuna, her treating mental health physician.  When coupled with an adequate explanation, an ALJ may properly deny controlling weight to a treating physician's opinion if it is internally inconsistent. *Clifford*, 227 F.3d at 871.

Dr. Kuna's opinions are unclear and ambiguous.  In 2002, Dr. Kuna twice indicated his impression that Claimant was doing reasonably well on medication and in November, 2003 he suggested that she pursue employment outside of the house.  R.282.  These statements are flatly inconsistent with his 2005 opinion that Claimant has been unable to have gainful employment for the last ten years.  R. 268.  The ALJ specifically noted this inconsistency in her decision.  R. 16.  The ALJ further explained she would not consider Dr.

Kuna a treating source since he had only seen Claimant twice during the period before Claimant's DLI and the visits that year were four months apart. *Id.* Lastly, the ALJ similarly discounted Dr. Kuna's 2007 letter since the doctor's disability assessment was made after a 2005 hospitalization, which occurred more than two years after her DLI. *Id.* The Court finds the ALJ adequately explained her reasons for discrediting Dr. Kuna's opinion. In considering the post-polio claim on remand, however, the ALJ remains free to contact Dr. Kuna for clarification of these apparent inconsistencies.

**2.      The ALJ Failed to Analyze the Specific Requirements of Claimant's Past Relevant Work.**

Because the ALJ concluded the disability analysis at Step Four by finding that Claimant could return to her past work as a secretary, it was essential for the ALJ to have understood and articulated the specific work the Claimant was performing in her past work. Step four of the sequential analysis requires an ALJ to give consideration to the individual's capacity to perform past relevant work. *Cohen v. Astrue*, 2007 U.S. App. LEXIS 29340, at *22 (7th Cir. 2007) ("[A]n ALJ cannot describe a previous job in a generic way, e.g., "sedentary," and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting."); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) ("We reiterate that the ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks.").

SSR 82-62 explains that an ALJ must obtain a detailed description of the work including information about strength, endurance, and mental demands when appropriate. During the hearing, the VE specifically indicated his difficulty in ascertaining the exact skills

involved in Claimant's past relevant work. R. 64. As the regulations make clear "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62. Here, the ALJ's decision merely states "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work (sedentary, semi-skilled), I find the claimant is able to perform it as actually performed prior to and on December 31, 2002." R. 18-19. This statement fails to satisfy the standard articulated in *Nolen* because the ALJ failed to provide facts describing Claimant's previous duties or an assessment of her ability to currently perform those specific tasks.

Thus, in assessing Claimant's RFC the Court finds substantial evidence supports the ALJ's decisions to reject Dr. Kuna's opinion. The Court also finds, however, that the ALJ failed to analyze the specific requirements of Claimant's past relevant work. This is a particularly significant error because the ALJ ended the disability determination analysis at Step Four.

## IV. CONCLUSION

The Court finds the ALJ: (1) erred in failing to include a discussion of Claimant's alleged post-polio syndrome, (2) did not violate SSR 83-20, (3) made a proper credibility determination, and (4) did not properly determine Claimant's RFC. **For the reasons set forth in this opinion, the Court grants Claimant's motion for summary judgment and denies the Commissioner's motion for summary judgment. This case is remanded to the Commissioner: (1) to consider and discuss the evidence of post-polio syndrome; (2) to**

**articulate an analysis of the listings considered; (3) to analyze Claimant's ability to**

perform past relevant work in relation to the specific requirements of that work; and

**(4)** to take further action consistent with this opinion.

        **SO ORDERED THIS 13th DAY OF FEBRUARY, 2008.**

        _____

        **MORTON DENLOW**
        **UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
Nastassia G. Johnson
The Law Offices of Barry A. Schultz, P.C.
1609 Sherman Ave., Ste. 205
Evanston, IL 60201

Counsel for Claimant

Donna L. Calvert
Bill Thomas
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, Illinois 60606

Counsel for Defendant

Joan C. Laser
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604

Counsel for Defendant